**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| MATTHEW FAIRBANKS,<br><br>      Plaintiff,<br><br>      v.<br><br>OFFICER DANA O'HAGAN, DETECTIVE WILLIAM CARLETON, OFFICER WILLIAM CASSIDY, OFFICER JAMES GEORGE and SERGEANT KEVIN JANVRIN,<br><br>      Defendants. | Civil Action No.<br>16-10023-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This civil action arises out of an alleged domestic assault and battery by Matthew Fairbanks ("Fairbanks" or "plaintiff") on his estranged father during a social gathering at plaintiff's apartment in Danvers, Massachusetts. The local police department was notified and Officers Dana O'Hagan ("Officer O'Hagan"), James George ("Officer George"), and William Cassidy ("Officer Cassidy"), and Sergeant Kevin Janvrin ("Sergeant Janvrin") and Detective William Carleton ("Detective Carleton") (collectively "defendants") responded. Fairbanks was subsequently arrested for assault and battery and the police discovered numerous weapons and ammunition after a search of his apartment.

Fairbanks brought this action pursuant to 42 U.S.C. § 1983 for, among other things, false arrest and unlawful search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution. In August, 2018, this Court allowed defendants' motion for summary judgment on the remaining counts for false arrest (Count I) and unlawful search and seizure (Counts II and III), holding that 1) the police had probable cause to arrest Fairbanks at the time of the incident and 2) their subsequent search of the apartment and seizure of the weapons found were justified both as a protective sweep and by the exigent circumstances exception to the Fourth Amendment warrant requirement.

Plaintiff has now filed a motion under Fed. R. Civ. P. 59(e) for reconsideration of the Court's prior decision and amendment of its judgment. He contends, among other things, that the Court 1) ignored evidence that created genuine issues of material fact with respect to the allegedly unlawful search and seizure and 2) failed to address his argument that there were three separate entries into his apartment on the night of the incident. After reviewing its previous Memorandum and Order (Docket No. 71), the filings of the parties and the affidavits of the relevant individuals, the Court agrees with plaintiff and

will alter and amend its prior order on defendants' motion for summary judgment.[1]

## I.   Background

### A.   Facts

For the Court's initial recitation of the relevant facts, see the prior Memorandum and Order on defendants' motion for summary judgment (Docket No. 71).

### B.   Additional Facts Not Previously Addressed

The Court herein supplements its statement of facts set forth in its prior Memorandum and Order.[2]

First, there now appears to be a genuine issue of material fact as to whether the .45 caliber pistol, knives and other weapons paraphernalia were in plain view when the officers confiscated them from the apartment without a warrant. Officer Cassidy submits in his affidavit that Maria Melendez ("Melendez") led the officers to the laundry area of the apartment and opened

> closet-like double doors revealing a .45 pistol and some knives and bullets and magazines that she had placed on top of a washer or dryer.

---

[1] Fairbanks does not contest the Court's dismissal of his claim for false arrest and thus the Court's decision as to that claim will be confirmed.
[2] In his motion to reconsider, Fairbanks also asserts that the disputed affidavit submitted by his counsel is admissible. Because this Court finds that the affidavits of Officer Cassidy, Detective Carleton and Maria Melendez create a genuine issue of material fact, it is unnecessary for it to decide that question.

Melendez denies that version of events, however, explaining in her affidavit that, while she told the officers where the pistol and knives were located, she never escorted them to the weapons. Rather, she contends that she left the apartment before the officers performed their protective sweep. Drawing a reasonable inference in favor of plaintiff as the non-moving party on summary judgment, see O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993), Melendez's affidavit suggests that it was the officers who opened the closet in the laundry room to discover the pistol and knives and thus those weapons were arguably not in plain view.

Second, there also appears to be a genuine issue of material fact as to whether there was a separate entry into the apartment after the initial protective sweep and whether the weapons and paraphernalia were seized during that subsequent search. According to the affidavit of Officer Cassidy, he did not move any objects during the protective sweep and thereafter

> stood-by outside the apartment door to make sure no one entered the apartment . . . [while] Sergeant Janvrin made arrangements for building maintenance and the police department's photographer to respond to the apartment.

Detective Carleton explains in his affidavit that

> [a]fter about 30 minutes from initial dispatch, [he] was requested to respond in [his] role as department photographer . . . [and that] [w]hen [he] arrived, officers had already entered [the apartment].

Detective Carleton also submits that he did not move or seize any items but took photographs of the laundry area with the pistol, knives and ammunition on top of the washer and dryer. Drawing a reasonable inference in favor of plaintiff, the affidavits of Officer Cassidy and Detective Carleton suggest that there may have been a separate entry and search of the apartment after the initial protective sweep.

## II. **Rule 59(e) Motion**

### A. **Legal Standard**

Upon timely motion, a court may alter or amend a judgment. Fed. R. Civ. P. 59(e). A court has considerable discretion in granting or denying a Rule 59(e) motion but such relief is extraordinary and should be used sparingly. Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). A motion to alter or amend a judgment will be allowed only if the movant demonstrates 1) an intervening change in the law, 2) a clear legal error or 3) that newly discovered evidence warrants modification of the judgment. In re Genzyme Corp. Sec. Litig., 754 F.3d 31, 46 (1st Cir. 2014).

### B. **Relevant Fourth Amendment Law**

The Fourth Amendment, as incorporated against the States by the Fourteenth Amendment, protects individuals from unreasonable searches and seizures. U.S. Const. amend IV; Mapp v. Ohio, 367 U.S. 643 (1961). A warrantless search of the home is

presumptively unreasonable unless some exception to the warrant requirement applies. Payton v. New York, 445 U.S. 573, 586-87 (1980).  One such exception is the ability of officers to perform a warrantless "protective sweep" of a home in conjunction with an arrest inside or immediately outside the home. Maryland v. Buie, 494 U.S. 325, 327 (1990); United States v. Lawlor, 406 F.3d 37, 41-42 (1st Cir. 2005) (holding that a protective sweep conducted following an arrest just outside the home may be reasonable).  To be valid, a protective sweep must be incident to an arrest, conducted to protect the safety of police officers or others and "narrowly confined to a cursory visual inspection of those places in which a person might be hiding". Buie, 494 U.S. at 327.  The search must also be supported by an officer's reasonable suspicion based on specific and articulable facts that the area swept may harbor a dangerous individual. Id.

A second exception to the Fourth Amendment's warrant requirement is the exigent circumstances exception.  That exception permits an officer to enter a home in response to an emergency situation, such as to prevent the imminent destruction of evidence or to respond to a potential threat to the safety or lives of the public or police officers. Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999).  To justify a warrantless entry under the exigent circumstances exception, an

officer must show that he or she had probable cause to enter the premises and an objectively reasonable basis for concluding that an exigency existed. United States v. Almonte-Baez, 857 F.3d 27, 31-32 (1st Cir. 2017).  Probable cause exists where the totality of the circumstances creates "a fair probability that contraband or evidence of a crime will be found in a particular place". Id. at 31 (quoting United States v. Tanguay, 787 F.3d 44, 50 (1st Cir. 2015)).

Even when an initial warrantless entry is justified by some exception to the warrant requirement, it is unlawful for an officer who has left the premises to reenter it once the justification for the initial search has dissipated unless a warrant has been secured or there is some new exigent circumstance justifying the reentry. Michigan v. Tyler, 436 U.S. 499, 511 (1978); Bilida v. McCleod, 211 F.3d 166, 172-73 (1st Cir. 2000) ("[W]here the justification for the original warrantless entry has completely expired and the officials have left, we see no basis in Tyler or in constitutional policy for any general rule that officials can then reenter without a warrant simply to seize contraband or evidence that was seen in plain view during the original entry.").  Where the reentry is merely a continuation of the initial search, however, there is no new search requiring new justification or a warrant. Tyler, 436 U.S. 511.

When an officer is lawfully searching a premises, the officer may seize any evidence of a crime or contraband that is in plain view even if he or she does not have a warrant. Arizona v. Hicks, 480 U.S. 321, 325-28 (1987). To seize an item pursuant to the plain view doctrine, the officer must 1) be lawfully present in the position from which the item is clearly visible, 2) have probable cause to believe that the item is evidence of a crime or is contraband and 3) have a lawful right of access to the item. United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015).

C.  **Application**

   1.  **The Alleged Warrantless Reentry**

For the reasons discussed in its prior Memorandum and Order, the Court reaffirms its holding that the initial entry and search of Fairbanks's apartment was justified both as a protective sweep and by the exigent circumstances exception to the warrant requirement. Defendants had reason to believe that there may have been others in the apartment in the presence of loaded weapons based on comments of the victim and another witness that Fairbanks was having a party in his apartment and possessed loaded guns. Furthermore, the officers had reason to believe that Fairbanks was unstable and potentially dangerous given the evidence that he had violently assaulted his father

and statements that he was a former U.S. Marine suffering from post-traumatic stress disorder.

As explained above, however, there is a genuine dispute of fact as to whether there was a subsequent reentry into the apartment after the initial protective sweep.  Fairbanks contends that, after initially searching his apartment and discovering the weapons and ammunition, the officers secured the premises and waited outside for Detective Carleton, the department photographer, to arrive.  Plaintiff asserts that it was only after photographs were taken during the subsequent reentry that the weapons, ammunition and other paraphernalia were seized and removed from the apartment.  The affidavits of Officer Cassidy and Detective Carleton provide support for plaintiff's contention that there was a separate search of his apartment after the protective sweep.  Notably, defendants do not contend that there was only a single entry into the apartment but rather simply maintain that the initial entry was justified as a protective sweep or by exigent circumstances.

Assuming for present purposes that there was a subsequent reentry into the apartment to take photographs, that search was unlawful because defendants did not have a warrant nor did any exception to the warrant requirement apply at that point.  By that time, the police knew there were no other individuals

located in the apartment and thus the second search could not be justified as a protective sweep.

Moreover, the apartment had been secured and officers posted outside so that no one could enter to retrieve the loaded weapons and thus there were no exigent circumstances present at that time.  Finally, the water from the broken toilet had already been turned off during the initial protective sweep and thus the subsequent entry could not have been justified pursuant to the officers' community caretaking function.  See Matalon v. Hynnes, 806 F.3d 627, 633-35 (1st Cir. 2015) (defining the community caretaking exception to the warrant requirement as involving those responsibilities of police officers discharged separately from their normal criminal enforcement activities). The sole purpose of the alleged reentry was to investigate the alleged crime and collect evidence.  A warrantless reentry under those circumstances was unlawful and the seizure of the weapons or other paraphernalia was also unlawful to the extent that they were collected during that reentry.

Defendants maintain that even if the reentry and seizure of the weapons and paraphernalia were unlawful, they are nevertheless entitled to summary judgment on the grounds of qualified immunity.  Qualified immunity shields government officials from civil liability unless 1) the plaintiff's allegations establish a violation of a protected right, 2) that

right was clearly established at the time of the defendant's alleged misconduct and 3) a reasonable officer in the defendant's position would have known that his or her conduct violated the protected right. McKenney v. Mangino, 873 F.3d 75, 80-81 (1st Cir. 2017) (explaining that a plaintiff must point to a controlling authority or consensus of cases of persuasive authority to demonstrate that the protected right was clearly established).

The decision of the First Circuit Court of Appeals in Bilida clearly establishes that an officer cannot reenter premises to collect evidence previously seen in plain view once the justification for the initial entry has expired. Bilida, 211 F.3d at 172-73. Once the officers conducted the initial protective sweep, secured the apartment and subsequently left to wait for the department photographer, they should have known that they needed a warrant or some other excuse to the warrant requirement to reenter. Accordingly, defendants cannot benefit from the doctrine of qualified immunity with respect to the search of the apartment after the initial protective sweep.

Because the Court previously failed to address whether there was a subsequent search of the apartment after the initial protective sweep and there is a genuine issue of material fact on that question, it erred in allowing defendants' motion for

summary judgment on plaintiff's claim for unlawful search (Count II).

### 2. Plain View Doctrine

The Court did not address in its prior Memorandum and Order whether the .45 pistol, knives and ammunition were in plain view when they were seized by the police officers. That omission was a clear legal error in light of the conflicting evidence of whether Melendez led the officers to the weapons in the laundry area. The Court previously found that the assertions in Melendez's affidavit were sufficient to deny defendants' claim that they had consent to enter and search the apartment but it did not consider the allegations in her affidavit as being sufficient to raise a genuine dispute as to whether the weapons were in plain view when discovered by the officers.

If Melendez's allegations are credited, she told the officers where to find the weapons and ammunition but was not present when they were actually found. That infers that it was the officers who opened the closet doors in the laundry room to discover the weapons and ammunition. The opening of storage spaces for the purpose of discovering contraband or evidence of a crime, rather than to uncover a hidden and potentially dangerous individual, is not justified as part of a protective sweep. See Buie, 494 U.S. at 334. Under such circumstances, the weapons and ammunition would not have originally been in plain

view nor would the officers have had a lawful right of access to them and thus the plain view doctrine would not apply.

Conversely, if defendants' version of events is taken as true, it was Melendez who led the officers to the weapons and ammunition in the laundry room and opened the closet doors to reveal them. No search within the meaning of the Fourth Amendment is implicated when a private individual unassociated with the police searches or seizes an item. See United States v. Jacobsen, 466 U.S. 109, 113-14 (1984). Assuming that it was Melendez who revealed the weapons and ammunition to the officers and that she was not acting as an agent of the police at the time, the plain view doctrine would apply. The officers were lawfully present in the laundry room due to the protective sweep and exigent circumstances. They had probable cause to believe that the weapons and ammunition were evidence of a crime because of the reported violent assault and because they were not properly stored. Finally, the officers had a lawful right of access to the weapons and ammunition because they were in plain view at that point.

The discrepancy in the testimony creates a genuine issue of material fact which the Court should have considered in its initial Memorandum and Order. Furthermore, the prerequisites of the plain view doctrine were clearly established at the time of the incident by both the Supreme Court and the First Circuit

such that a reasonable officer should have been aware of its parameters and thus defendants are not entitled to qualified immunity. See, e.g., Hicks, 480 U.S. at 325-28; Gamache, 792 F.3d at 199; United States v. Paradis, 351 F.3d 21, 31 (1st Cir. 2003) (holding that a gun was not in plain view where it was hidden underneath a pile of clothing and stuffed animals).

Therefore, the Court erred in allowing defendants' motion for summary judgment with respect to the claim for unlawful seizure of the .45 pistol, knives and ammunition (Count III).

## <u>ORDER</u>

For the foregoing reasons, plaintiff's motion for reconsideration and to alter or amend the judgment (Docket No. 73) is **ALLOWED** and the Court's prior Memorandum and Order (Docket No. 71) is **AMENDED** as follows:

1) defendants' motion for summary judgment as to Count I of the complaint for false arrest is **ALLOWED**; and

2) defendants' motion for summary judgment as to Count II for unlawful search and as to Count III for unlawful seizure is **DENIED**.

The judgement entered on August 10, 2018 (Docket No. 72) is hereby **VACATED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 10, 2019